**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi (Cal. Bar No. 224887)
One Embarcadero Center, 38th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
Email: jsagafi@outtengolden.com

**SOMMERS SCHWARTZ, P.C.**
Kevin J. Stoops (*pro hac vice* forthcoming)
Charles R. Ash, IV (*pro hac vice* forthcoming)
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 746-4001
Email: kstoops@sommerspc.com
Email: crash@sommerspc.com

*Attorneys for Plaintiff and Proposed Collective*
*and Class Members*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| JENNIE POYE**,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>YELP, INC.**,**<br><br>Defendant. | Case No.: _____<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT WITH JURY DEMAND** |

1    Plaintiff, Jennie Poye, individually and on behalf of all others similarly situated, by and

2  through her attorneys, hereby brings this Collective and Class Action Complaint against Defendant,

3  Yelp, Inc., and states as follows:

4                                                **INTRODUCTION**

5    1.    This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and

6  Fed. R. Civ. P. 23 by Plaintiff, Jennie Poye ("Plaintiff"), individually and on behalf of all similarly

7  situated persons (Jennie Poye and the putative Collective and Class are hereinafter referred to as

8  "Plaintiffs") employed by Defendant, Yelp, Inc. ("Defendant" or "Yelp"), arising from Defendant's

9  willful violations of the Fair Labor Standards Act ("FLSA," or 29 U.S.C. § 201 *et seq.*), Arizona

10 Wage Law (Ariz. Rev. Stat. § 23-350 *et seq.*), the Arizona Minimum Wage Act (Ariz. Rev. Stat. §

11 23-362 *et seq.*), the Arizona Administrative Code (R-20-5-1201 *et seq.*), and common law breach

12 of contract.

13   2.    Plaintiff was employed by Defendant as a non-exempt call center sales agent

14 ("Agent").

15   3.    The U.S. Department of Labor recognizes that call center jobs, like those held by

16 Defendant's Agents, are homogenous; in July 2008, it issued Fact Sheet #64 to alert call center

17 employees to some of the abuses which are prevalent in the industry.

18   4.    One of those abuses, which is at issue in this case, is the employer's refusal to pay

19 for work "from the beginning of the first principal activity of the workday to the end of the last

20 principal activity of the workday." *Id.*

21   5.    More specifically, Fact Sheet #64 condemns an employer's non-payment of an

22 employee's necessary pre-shift activities: "An example of the first principal activity of the day for

23 agents/specialists/representatives working in call centers includes starting the computer to

24 download work instructions, computer applications and work-related emails." *Id.*  Additionally,

25 the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-

26 shift and post-shift job-related activities, must be kept." *Id.*

27

28

6.      Defendant failed to pay Plaintiff and all similarly situated employees for their pre-, mid-, and post-shift time spent booting up their computers, logging into required computer software applications, and reviewing work-related e-mails and other information.

7.      Additionally, as more fully described below, Defendant pressured Plaintiff and all similarly situated employees to perform off the clock work by discouraging them from recording more than forty (40) hours in any single work week.

## JURISDICTION

8.      This court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

9.      Additionally, this court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

10.     Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's employees, including the Plaintiffs in this case, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis.

11.     This court has jurisdiction over Plaintiff's state law class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which at least some members of the proposed classes have a different citizenship from Defendant.

12.     The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because the state law claims and the federal claim are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

13.     The court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

14.     The court has personal jurisdiction over Defendant because Defendant does business within the state of California, is headquartered at 140 New Montgomery St, 9th Floor, San

3
COLLECTIVE AND CLASS ACTION COMPLAINT

1  Francisco, California, and is registered with the California Department of the Secretary of State

2  (Business ID: C2677032).

3      15.    Personal jurisdiction also applies to Defendant because Defendant has purposefully

4  availed itself of the privileges of conducting activities in the state of California and established

5  minimum contacts sufficient to confer jurisdiction over Defendant, and the assumption of

6  jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice

7  and is consistent with the Constitutional requirements of due process.

8  **VENUE**

9      16.    Venue is proper in the Northern District of California because Defendant employs

10  Agents in this district, and a substantial portion of the events forming the basis of this suit

11  (including the creation and implementation of the pay policies in question) occurred in the

12  Northern District of California.

13  **INTRADISTRICT ASSIGNMENT**

14      17.    A substantial part of the events or omissions which give rise to the claims occurred

15  in San Francisco County, and therefore this action is properly assigned to the San Francisco or

16  Oakland Division.  N.D. Cal. Local Rule 3-2(c)-(d).  Defendant's headquarters are in San Francisco

17  County, and the pay policies at issue in the case were formulated and instituted by Defendant in

18  San Francisco County.

19  **PARTIES**

20      18.    Plaintiff Jennie Poye is a resident of Denver, Colorado, and was employed by

21  Defendant as an Agent in the Scottsdale, Arizona call center from February 2, 2015 until March 31,

22  2017.  Plaintiff Poye signed a consent form to join this lawsuit, which is attached as ***Exhibit A***.

23      19.    Defendant operates and has operated "call centers" in Arizona and other locations

24  across the country where telephone-dedicated employees, hereinafter referred to as "Agents,"

25  handle phone calls and attempt to sell advertising services to Defendant's customers.

26      20.    Defendant is a Delaware corporation with its headquarters located in San Francisco,

27  California. Defendant's registered agent for service of process in this case is National Registered

28  Agents, Inc., 818 W. Seventh St., Suite 930, Los Angeles, California 90017.

**GENERAL ALLEGATIONS**

21.    Defendant employed Plaintiff Jennie Poye as a full-time Agent at its brick-and-mortar call center location in Scottsdale, Arizona from February 2, 2015 until March 31, 2017. Plaintiff's most recent pay rate was $52,000.00 annually or $25.00 per hour, plus commissions.

22.    Plaintiffs and other Agents perform the following duties and tasks: responding to client inquiries regarding advertising space, conducting inbound and outbound sales calls, completing sales applications for clients, and preparing and submitting work orders for approval by management.

23.    In order to perform their jobs, Plaintiff and other Agents were required to boot up and log in to various computer programs, software programs, and applications in order to access required information and software.  The boot-up/log-in process took substantial time on a daily basis ranging from 5 to 10 minutes per day, and up to 30 minutes on days where their computers were not working properly.

24.    However, Defendant's policy required Plaintiff and all other similarly situated Agents to perform this pre-shift work before the start of their scheduled shift, so that they were prepared to start calls at the moment their scheduled shift began.

25.    Plaintiff and all other similarly situated Agents recorded and submitted their own hours in a program called *WorkDay*.  However, Defendant trained and expressly instructed Agents not to record more than forty (40) hours a week in *WorkDay*.  Defendant also used its scheduling and adherence policies against Agents to force them to only record forty (40) hours per work week, but, at the same time also required Agents to be prepared to take calls at the moment their scheduled shift started. As a result, Agents were not actually "clocked in" for their shifts until *after* the computer boot-up/log-in process was complete, meaning that Plaintiff and all other Agents worked at least 5 to 10 minutes each per shift that they were never compensated for.

26.    The off-the-clock time Plaintiffs spend booting up computers and logging into software applications directly benefitted Defendant.

27.    This boot-up/log-in process was an essential part of Plaintiffs' job responsibilities as Agents.

28.     Additionally, Defendant also required Plaintiff and other Agents to attend pre-shift sales meetings where they received work instructions.  These meetings often occurred up to thirty (30) minutes before the Agents scheduled shift.  Additionally, on some days, Plaintiffs were required to watch mandatory training and instructional videos before the start of their scheduled shift. Plaintiff and other similarly situated Agents were not compensated for all hours worked during these pre-shift sales meetings and for time spent watching training videos.

29.     Defendant's scheduling policies permitted Plaintiff and other Agents a one (1) hour unpaid lunch break.  However, Plaintiff and other Agents were not completely relieved of all work activities during their lunch breaks.  Defendant used its schedule adherence policies against Plaintiff and other Agents to ensure that their work hours did not exceed forty (40) hours in a single work week, and this often meant reporting an hour lunch when, in fact, their lunch period was shorter.

30.     Plaintiff and other similarly situated Agents were often on sales calls well past the end of their scheduled shift.  Additionally, the one (1) to two (2) minutes spent shutting down and closing computer applications and networks after the scheduled shift ended was not recorded by Plaintiff and other Agents due to Defendant's schedule adherence policies.

31.     Defendant used its schedule adherence policies against Plaintiff and other similarly situated Agents to discourage them from recording time worked beyond the end of their scheduled shift.  In the event that Plaintiff or another similarly situated Agent wanted to submit time in excess of forty (40) hours per week, they were required to stay even later and complete an overtime approval form that explained the reason they worked over forty (40) hours in a week.  Often times, even after being made aware of the overtime worked, Defendant denied the request, which meant the time worked over forty (40) was not compensated at all.

32.     Plaintiff and other similarly situated Agents were instructed by management to adjust the hours they submitted in *WorkDay* to match forty (40) hours each workweek.  As a result, to avoid scrutiny from management, Plaintiff and other Agents generally used their scheduled start time and end time, minus one hour to reflect an unpaid lunch, as the time submitted via *WorkDay*.

33.     Upon information and belief, Defendant utilizes a program called *ShorTel* that monitors the times and lengths of calls made by Plaintiff and other similarly situated Agents. Accordingly, where an Agent's time records illustrated a clock out time in *WorkDay* before the end of the Agent's call as documented by *ShorTel*, the Agent would unquestionably have performed uncompensated work.

34.     At all relevant times, Defendant controlled Plaintiff's and other Agents' work schedule, duties, protocols, applications, assignments and employment conditions.

35.     Despite seeing and knowing that Plaintiffs and other Agents performed work at their work stations prior to their scheduled shift time, during lunch, or after their scheduled shift time, Defendant and its managers on the floor of the call center did not make any effort to stop or otherwise disallow this pre-, mid-, and post-shift off-the-clock work and instead allowed and permitted it to happen.

36.     Defendant possesses, controls and/or has access to information and electronic data that shows the times Plaintiff and other Agents booted up and logged into and out of their computers and the time they logged into and out of their telephone systems each day.

37.     At all relevant times, Defendant was able to track the amount of time that Plaintiffs and other Agents spent in connection with the preliminary boot-up/log-in and boot-up/log-out processes; however, Defendant failed to pay Plaintiff and the putative Classes and Collective for the pre-shift boot-up/log-in process and the post-shift shut-down/log-out process in connection with each shift.

38.     At all relevant times, Defendant used its adherence and attendance policies against Plaintiff and other Agents in ways that resulted in systematic under-compensation of Plaintiff and other Agents. Further, Defendant expressly instructed Plaintiffs to not record all hours worked in *WorkDay*.

39.     Defendant disciplined or criticized Plaintiffs if they were not logged into their phones and ready to handle calls by the start of their scheduled shift time.

40.     These policies discussed herein coerced Agents, including Plaintiffs, into coming in early to boot up their computers, initialize their software programs and read company e-mails and

instructions, watch mandatory training videos, and attend sales meetings prior to their start of their scheduled shift time.   Additionally, these polices discouraged Agents from recording all hours worked and instead encouraged and permitted off-the-clock work.

41.     Defendant did not instruct Plaintiffs and other Agents to not log into their computers or telephone, or to not read company e-mails, prior to the start of their scheduled shift time. Rather, Defendant required, permitted and/or allowed Plaintiffs and other Agents to work prior to their scheduled shift time.

42.     At all relevant times, Defendant's policies and practices deprived Plaintiffs and other Agents of wages owed for the pre-, mid-, and post-shift work activities described above. Because Plaintiffs and other Agents often worked 40 hours or more in a workweek, Defendant's pay practices also deprived them of overtime pay at a rate of 1.5 times their regular rate of pay.

43.     As such, Defendant failed to provide accurate records of the time worked by Plaintiff and other Agents in violation of their duty under the FLSA and under state law.

44.     Upon information and belief, Plaintiff and all other similarly situated Agents were paid twice a month.[1]   An example of Defendant failing to pay Plaintiff Jennie Poye overtime for hours worked in excess of 40 hours (as mandated by the FLSA) includes the following:

Pay period ending March 31, 2017:

> ➢  Plaintiff was paid for 86.67 hours at her regular hourly rate and no hours at an overtime rate. (***Exhibit B***).

> ➢  Additionally, with at least 5-10 minutes of pre-shift boot-up time per shift and 1-2 minutes in post-shift shut-down time, over twelve (12) shifts,[2] Plaintiff should have been paid an additional 72 to 144 minutes at her overtime rate for this twelve shift pay period.

---

[1] Plaintiff's paystubs reflect that she worked 86.67 hours per pay period at her regular rate of pay.  Defendant paid Plaintiffs twice a month, or 24 times a year.  The reason Plaintiff's pay stubs state that she worked 86.67 hours per pay period at her regular rate is because Defendant simply used the total number of regular rate work hours in a year (40 hours per week x 52 weeks = 2,080 hours) and divided that by the number of pay periods in the year (2,080 hours / 24 pay periods = 86.67 hours).

[2] The number of shifts performed by Plaintiff varied by pay period and are evident in her paystubs, some of which are attached as exhibits to this complaint. For the purposes of calculating unpaid wages, Plaintiff is assumed to have worked one shift per day.

Pay period ending February 28, 2017:

> ➤ Plaintiff was paid for 86.67 hours at her regular rate and 0.95 hours at her overtime rate.  (***Exhibit C***).

> ➤ Additionally, with at least 5-10 minutes of pre-shift boot-up time per shift and 1-2 minutes of post-shift shut-down time, over nine (9) shifts, Plaintiff should have been paid an additional 54 to 108 minutes at her overtime rate for this nine shift pay period.

45.     Under the FLSA the regular rate is the "keystone" to calculating the overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).  It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

46.     No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated.  29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id.*

47.     Defendant's Agents were paid a base salary, plus commission, for their non-exempt work.

48.     However, Defendant's Agents' salary and commission does not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

49.     A salaried employee's regular rate of pay is computed by reference to the number of hours the salary is intended to compensate. 29 C.F.R. §778.113.  If a salary covers a period of time that exceeds the typical 40-hour workweek, the salary must be converted to its workweek equivalent. 29 C.F.R. §778.113(b).  Thus, if an employee is paid bi-weekly, the wage is translated to its equivalent weekly wage by multiplying by 26 (pay periods) and dividing by 52 (weeks).  If the employee is paid monthly, wage is translated to its equivalent weekly wage by multiplying by 12 (months) and dividing by 52 (weeks).  *Id.*  Once the applicable workweek salary is determined, the regular rate is computed by dividing the derived workweek the salary was intended to cover.

50.     There is a statutory presumption that remuneration in any form must be included in the regular rate calculation.  The burden is on the Defendant to establish that any payment should be excluded. *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000).  Thus, determining the regular rate starts from the premise that all payments made to Plaintiff for work performed are included in the base calculation unless specifically excluded by statute.

51.     Additionally, "commissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate.  This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission."  29 C.F.R. § 778.117.

52.     Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation."  *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945).  The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages.  Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

53.     Plaintiffs' "total remuneration" for purposes of calculating their overtime rates included salary earnings *and* the payment of any commissions earned during the work week.

54.     Accordingly, Defendant was required to pay their Plaintiffs at an overtime rate that included the Plaintiffs' "total remuneration" (i.e. salary plus commissions received in the workweek).  However, Defendant failed to do so.

55.     For example, for the October 15, 2016 workweek, Plaintiff's overtime rate was incorrectly calculated as follows:

➢     On October 15, 2016, Plaintiff's base salary was $48,000.00.  That salary equated to $2,000.00 per pay check, based on 24 pay periods, or approximately $923.08 per work week ($48,000.00 / 52 weeks = $923.0769).  Defendant calculated her regular

base hourly rate as $23.0769 and her base overtime rate at $34.6154. These rates do **not** include her commissions received in any given workweek. *Exhibit D.*

➢ During the workweek of October 15, 2016, Plaintiff was paid $1,650.00 in commissions. *Exhibit D*. Accordingly, her regular hourly rate should have been $62.76 ($1,650 commissions + $923.08 workweek salary = $2,573.08 total remuneration for the workweek; then $2,573.08 divided by approximately 41 hours worked = $62.76 regular rate).

➢ As set forth above, Defendant patently violated the FLSA by improperly calculating Plaintiffs' overtime rates because they failed to include commission payments in the calculation.

➢ Accordingly, with at least 5-10 minutes of pre-shift boot-up time per shift and 1-2 minutes of post-shift shut-down time, multiplied over five (5) shifts, Plaintiff should have been paid an additional 30 to 60 minutes at her overtime premium rate of $94.14 per hour.

➢ Additionally, for any other off-the-clock-work performed beyond forty hours in this workweek, such as time spent watching training videos, staying late to take calls, or for participation in team sales meetings, Plaintiff should have been paid at her overtime rate of $94.14 per hour.

56. Defendant classifies Plaintiff and all other similarly situated Agents as non-exempt employees who are entitled to overtime compensation. *Exhibit E*, New Hire Employee Acknowledgement Form, p. 1.

57. Defendant is a leader in its field, employs thousands of Agents, and knew or should have known that Plaintiffs and other Agents' time spent in connection with the preliminary boot-up/log-in process is compensable under the FLSA and the common law.

## COLLECTIVE ACTION ALLEGATIONS

58. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> All current and former call center agents who worked for Defendant at any time after June 9, 2014 and through the date of Judgment.

(hereinafter referred to as the "Collective"). Plaintiff reserves the right to amend this definition as necessary.

59. Excluded from the proposed Collective are Defendant's executives, administrative, and professional employees, including computer professionals and outside sales persons.

60.     With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).  The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

61.     The employment relationships between Defendant and every Collective member is the same and differ only by name, location, and rate of pay.  The key issues – whether Defendant failed to pay Agents for all hours worked, including pre-, mid-, and post-shift work activities and whether such time is compensable – do not vary substantially among the Collective members.

62.     Plaintiff estimates the Collective, including both current and former employees over the relevant period, will include several thousand members.  The precise number of Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> All current and former call center agents who worked for Defendant at any time after June 9, 2014 and through the date of Judgment.

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiff reserves the right to amend this definition as necessary.

64.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical.  Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members.  Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

65.     There is a well-defined community of interest among Rule 23 Nationwide members and common questions of law and fact predominate in this action over any questions affecting

individual members of the Rule 23 Nationwide Class.  These common legal and factual questions, include, but are not limited to, the following:

      a. Whether the pre-, mid-, and post-shift time Rule 23 Nationwide Class members spend on work activities is compensable time; and

      b. Whether Defendant's non-payment of wages for all compensable time amounts to a breach of contract.

66.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

67.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

68.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

69.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

70.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct.

1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

71.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 ARIZONA CLASS ACTION ALLEGATIONS

72.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> *All current and former call center agents who worked for Defendant in Arizona at any time after June 9, 2014 and through the date of Judgment.*

(hereinafter referred to as the "Rule 23 Arizona Class").  Plaintiff reserves the right to amend this definition as necessary.

73.     The members of the Rule 23 Arizona Class are so numerous that joinder of all Rule 23 Arizona Class members in this case would be impractical.  Plaintiffs reasonably estimate that there are hundreds of Rule 23 Arizona Class members.  Rule 23 Arizona Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

74.     There is a well-defined community of interest among Rule 23 Arizona Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Arizona Class.  These common legal and factual questions, include, but are not limited to, the following:

   a.  Whether the pre-, mid-, and post-shift time Rule 23 Arizona Class members spend on work activities is compensable time; and

   b.  Whether Defendant paid the Rule 23 Arizona Class members for all hours worked and at or above the minimum wage that is required by Arizona state law;

   c.  Whether Defendant violated its recordkeeping duties under Arizona law in regards to the employment of the Rule 23 Arizona Class members;

   d.  Whether Rule 23 Arizona Class members are owed overtime (above the federally mandated overtime wages due under the FLSA) for time spent performing pre-, mid-, and post-shift work activities, and if so, the appropriate amount thereof.

75.     Plaintiff's claims are typical of those of the Rule 23 Arizona Class in that she and all other Rule 23 Arizona Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Arizona Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Arizona Class members.

76.     Plaintiff will fully and adequately protect the interests of the Rule 23 Arizona Class and she has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions.  Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Arizona Class.

77.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Arizona Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

78.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

79.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

80.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Arizona Class and declaratory relief is appropriate in this case with respect to the Rule 23 Arizona Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq.* -- FAILURE TO PAY OVERTIME**

81.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

82.    At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

83.    Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

84.    At all times relevant to this action, Plaintiff and the members of the Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

85.    Plaintiff and the members of the Collective were either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

86.    Defendant has had, and continues to have, an annual gross business volume in excess of $500,000.

87.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

88.    At all times relevant to this action, Defendant required Plaintiff and all similarly situated current and former Collective members to perform 5 to 10 minutes of pre-shift boot-up/log-in activities per shift and at least 1 to 2 minutes of post-shift shut-down/log-off activities per shift, but failed to pay these employees for this time and, where applicable, failed to pay the federally mandated overtime compensation for all services performed.

89.    Defendant also used its scheduling adherence policies and practices to require or pressure Plaintiff and all similarly situated current and former Collective members to only record 40 hours of work per week, even when they worked in excess of 40 hours in the week.

90.    Defendant also failed to relieve Plaintiff and all similarly situated current and former Collective members from all work activities while on their unpaid lunch breaks.  As a result,

Plaintiff and the members of the Collective were not paid for all hours worked and those hours were not factored into overtime calculations.

91.     The pre-, mid-, and post-shift off-the-clock work performed by Plaintiffs and all similarly situated Collective members every session is an essential part of their jobs and these activities and the time associated with these activities are not *de minimis*.

92.     In workweeks where Plaintiff and other Collective members worked 40 hours or more, the uncompensated pre-, mid-, and post-shift time should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage (which amount would increase during pay periods when the employee received commissions).  29 U.S.C. § 207.

93.     Defendant's violations of the FLSA were knowing and willful.  Defendant knew or could have easily determined how long it took for its Agents to complete the pre-, mid-, and post-shift work tasks and Defendant could have properly compensated Plaintiffs and the Collective for all of the work they performed, but did not.

94.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Nationwide Class Action)**
**BREACH OF CONTRACT**

95.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

96.     At all times relevant to this action, Defendant had contracts with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate.

97.     Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

98.     Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and

carrying out the work they performed each shift, including the unpaid off-the-clock work that was required of them, that they performed, and that was accepted by Defendant, in connection with the pre-shift work activities described herein.

99.     By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the pre-, mid-, and post shift activities performed prior to clocking in or after they clocked out for each shift, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

100.    This claim is appropriate to the extent Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in that Defendant paid them more than the applicable minimum wage but less than 40 hours per week (i.e., pure "gap time" claims).

101.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing pre-, mid-, and post-shift work.  Such record keeping is a fundamental part of an "employer's job."

102.    As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Plaintiffs and every other member of the Rule 23 Nationwide Class have been damaged, in an amount to be determined at trial.

103.    These claims are appropriate for nationwide class certification under Rules 23(b)(2) and (b)(3) because the law of contracts is substantially the same throughout the United States.

**COUNT III**
**(Rule 23 Arizona Class Action)**
**VIOLATION OF ARIZONA WAGE LAW (Ariz. Rev. Stat. § 23-350 *et seq.*), ARIZONA**
**MINIMUM WAGE ACT (Ariz. Rev. Stat. § 23-362 *et seq.*), AND ARIZONA**
**ADMINISTRATIVE CODE (R-20-5-1201 *et seq.*) – FAILURE TO PAY WAGES AND**
**OVERTIME UNDER ARIZONA LAW**

104.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

105.    At all relevant times, Arizona Wage Law required Defendant to pay Plaintiff and the Arizona Class for all wages due.  Ariz. Rev. Stat. § 23-351 (C).

106.    Defendant failed to pay Plaintiff and the Arizona Class for all wages due in violation of the Arizona Wage Law by not compensating the Plaintiff and the Arizona Class for all hours worked during the pay period.  "*Hours worked* includes all time an employee is employed" and

"*Wages* means nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation."  Ariz. Rev. Stat. § 23-350.

107.    A viable claim for gap time exists under the provisions of the Arizona Wage Law (Ariz. Rev. Stat. § 23-350 *et seq.*), the Arizona Minimum Wage Act (Ariz. Rev. Stat. § 23-362 *et seq.*), and the Arizona Administrative Code (R-20-5-1201 *et seq.*).

108.    Plaintiff and the Arizona Class are entitled to the recovery of treble the amount of wages owed.  Ariz. Rev. Stat. § 23-355 (A).

109.    Additionally, Ariz. Rev. Stat. § 23-364 (G) states: "Any employer who fails to pay the wages or earned paid sick time required under this article shall be required to pay the employee the balance of the wages or earned paid sick time owed, including interest thereon, and an additional amount equal to twice the underpaid wages or earned paid sick time."

110.    Defendant failed to record all hours worked by Plaintiff and the Arizona class as required by the Arizona Wage Law (Ariz. Rev. Stat. § 23-350 *et seq.*).

111.    Pursuant to Ariz. Rev. Stat. § 23-364 (F): "Any employer who violates recordkeeping, posting, or other requirements that the commission may establish under this article shall be subject to a civil penalty of at least $250 dollars for a first violation, and at least $1000 dollars for each subsequent or willful violation and may, if the commission or court determines appropriate, be subject to special monitoring and inspections."

112.    Defendant's actions discussed above were willfully oppressive, fraudulent and malicious, entitling Plaintiff and the Rule 23 Arizona Class to treble damages as set forth herein.

113.    As a result of the Defendant's violations of Arizona law set forth herein, Plaintiff and the Rule 23 Arizona Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23 Arizona Class are entitled to recover unpaid wages owed, plus costs, interest, attorneys' fees, treble damages, and other appropriate relief under Arizona law.

### **RELIEF REQUESTED**

WHEREFORE, Plaintiff, Jennie Poye, requests an entry of an Order for the following

relief:

a. Certifying this case as a collective action (for the FLSA Collective) in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count II);

c. Certifying this action as a class action (for the Rule 23 Arizona Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's Arizona state law claims (Count III);

d. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all Collective action class members and Rule 23 Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e. Designating Plaintiff as the representative of the FLSA Collective action class, the Rule 23 Nationwide Class, and the Rule 23 Arizona Class and undersigned counsel as Class counsel for the same;

f. Declaring Defendant willfully violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g. Declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regular hourly rate;

h. Declaring Defendant willfully violated the Arizona Wage Law (Ariz. Rev. Stat. § 23-350 *et seq.*), the Arizona Minimum Wage Act (Ariz. Rev. Stat. § 23-362 *et seq.*), and the Arizona Administrative Code (R-20-5-1201 *et seq.*);

i. Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective, the Rule 23 Nationwide Class, and the Rule 23 Arizona Class the full amount of damages, penalties, and liquidated damages available by law;

j. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

k. Awarding pre- and post-judgment interest to Plaintiff on these damages; and

l. Awarding such other and further relief as this Court deems appropriate.

1

## JURY DEMAND

2

Plaintiff, Jennie Poye, individually and on behalf of all others similarly situated, by and

3

through her attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of

4

Civil Procedure and the court rules and statutes made and provided with respect to the above

5

entitled cause.

6

Respectfully Submitted

7

8

Dated: June 9, 2017                          By:    /s/ Jahan C. Sagafi
                                                     Jahan C. Sagafi

9

10

**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi (Cal. Bar No. 224887)
One Embarcadero Center, 38th Floor

11

San Francisco, California 94111
Telephone: (415) 638-8800

12

Facsimile: (415) 638-8810
Email: jsagafi@outtengolden.com

13

14

**SOMMERS SCHWARTZ, P.C.**
Kevin J. Stoops (*pro hac vice* forthcoming)

15

Charles R. Ash, IV (*pro hac vice* forthcoming)
One Towne Square, 17th Floor

16

Southfield, Michigan 48076
Telephone: (248) 355-0300

17

Facsimile: (248) 746-4001
Email: kstoops@sommerspc.com

18

Email: crash@sommerspc.com

19

*Attorneys for Plaintiff and Proposed Collective*

20

*and Class members*

21

22

23

24

25

26

27

28

21
COLLECTIVE AND CLASS ACTION COMPLAINT